**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| -------------------------------------------------------------------- X | |
| SUKHDEEP BHOGAL ) | **Civ. Case No. 3:22-cv-00355** |
| ) | |
| *Plaintiff,* ) | |
| ) | **COMPLAINT** |
| -against- ) | |
| ) | |
| TINGO INTERNATIONAL HOLDINGS, INC., TINGO, ) | **JURY TRIAL** |
| INC., and DOZY MMOBUOSI, Individually ) | **DEMANDED** |
| ) | |
| *Defendants.* ) | |
| -------------------------------------------------------------------- X | |

Plaintiff SUKHDEEP BHOGAL (hereinafter "Plaintiff" or "Mr. Bhogal") by his attorneys, WOLTZ & FOLKINSHTEYN, P.C., brings this action arising out of a breach of a contract of employment entered into between the parties on or about January 21, 2021 against TINGO INTERNATIONAL HOLDINGS, INC. (hereinafter "TIH"), TINGO, INC. (hereinafter "Tingo", and, together with TIH, "Corporate Defendants"), and DOZY MMOBUOSI (hereinafter "Defendant Mmobuosi" or "Individual Defendant", and, together with the Corporate Defendants, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.      Mr. Bhogal brings this action for common law breach of contract, unjust enrichment, and violations of various Connecticut statutes guaranteeing workers fair compensation for work performed for Connecticut employers.

2.      As set forth in further detail below, Mr. Bhogal and certain Defendants entered into an employment contract on January 21, 2021 (the "Employment Agreement") pursuant to which THI would pay certain compensation to Mr. Bhogal in exchange for his work as the CEO of Tingo Mobile PLC ("Tingo Mobile"). A copy of the Employment Agreement is attached as Exhibit A to the Complaint.

3.      Defendants breached the Employment Agreement and violated various Connecticut wage and hour laws and common laws by failing to pay Plaintiff according to the terms of the Employment Agreement, and with one paltry, singular exception, failing to pay him *anything at all* for most of his six (6) months of employment.

4.      Mr. Bhogal has been and continues to be damaged by the Defendants' conduct. Thus, as set forth in further detail below, he is entitled to, *inter alia*, damages resulting from Defendants' breach of contract, unfair enrichment, and violation of Connecticut wages and hours laws.

## JURISDICTION AND PARTIES

5.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that this is a civil action between a citizen of a foreign country and citizens of diverse U.S. states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Plaintiff is a natural person who resides in, and who is a citizen of, India.

7.      TIH is a Delaware corporation with its principal place of business in Stamford, Connecticut.  At all relevant times to the instant Complaint, TIH maintained an office at 1 Stamford Plaza, 263 Tresser Boulevard, 9th Floor, Stamford 06901.

8.      Upon information and belief, Tingo is a Nevada corporation with its principal place of business in New York, New York.

a)      Upon information and belief, Tingo acquired all of the share capital of Tingo Mobile, a Nigerian corporation, from TIH and its sole shareholder Defendant Mmobuosi on or about August 15, 2021.

b)      Per the contemporaneous press release dated August 19, 2021, this all-stock deal was "for a consideration of 928 million Class A Common shares, and 65 million Class

B common Shares valuing Tingo Mobile at $3.7 Billion USD, one of the most valuable Fintech companies to ever emerge from Africa."

    c)    Upon information and belief, Tingo is publicly traded on the OTCQB.

9.    Upon information and belief, Tingo Mobile is a Nigerian public limited company wholly owned by Tingo.   Further, upon information and belief, it is an agritech company, engaged in the manufacturing of mobile phones, and fintech products designed for rural Africa.

10.    Upon information and belief, Defendant Mmobuosi is a natural person who is a citizen of Nigeria and a resident of the United Kingdom and Washington, D.C.

    a)    Defendant Mmobuosi is the CEO and a shareholder of Tingo and TIH.

    b)    Per the Initial Statement of Beneficial Ownership of Securities (Form 3) dated November 23, 2021, Defendant Mmobuosi owns 10,000,000 of Class A Common Stock of Tingo, another 104,820,000 of Class A Common Stock of Tingo, and further an additional 823,180,000 of Class A Common Stock indirectly as the principal shareholder of TIH.

11.    Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs, including claims for wages and other compensation owed under the terms of his Employment Agreement and pursuant to Connecticut law, as well as additional equitable and other relief as the Court deems just and proper, as a result of Defendants' breach of employment contract with Plaintiff as well as Defendants' violations of the Connecticut Wage Payment Law (Conn. Gen. Stat. Ann. §§ 31-58 to 31-76o, hereinafter "CWPL").

12.    Supplemental jurisdiction is appropriate for Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue in the District of Connecticut is proper pursuant to 28 U.S.C. § 1391 because THI has its principal place of business in this District, and a substantial part of the events or omissions on which the claims asserted herein are occurred in this District. Furthermore, the decisions that caused harm to Plaintiff were made in this District; and a significant portion of Plaintiff's work for THI was intended to, and did, benefit THI within this District.

### STATEMENT OF FACTS

14.     On or about February 1, 2021, Mr. Bhogal began working for THI under the Employment Agreement entered into between THI and Plaintiff and countersigned by Defendant Mmobuosi on or about January 21, 2021.

15.     Under the terms of the Employment Agreement, Mr. Bhogal was appointed as Chief Executive Officer of Tingo Mobile, at the time a wholly-owned subsidiary of THI.

16.     Mr. Bhogal's role with Tingo Mobile was to oversee the operation of that company in Nigeria as well as to provide crucial support for THI's planned initial public offering "IPO" in the United States. This IPO ultimately involved the creation of Tingo, which subsequently purchased Tingo Mobile, as described more fully below.

17.     The Employment Agreement entered into between Mr. Bhogal and THI entitled Mr. Bhogal to *inter alia*: (i) a $30,000 signing bonus, (ii) $14,166.67 per month as salary, (iii) a $15,000 relocation bonus, (iv) 200,000 shares of THI; and (v) 30 days paid time off per year.

18.     The Employment Agreement provided that, after the first three months of employment, deemed a "probationary period", the party initiating separation of employment must provide written notice of between two to four weeks, depending on whether Mr. Bhogal remained employed for more than a year.

19.     The Employment Agreement also provided for various employee benefits, including paid time off for vacation, holidays, and sick and family responsibility leave.

20.     Further, the Employment Agreement provided that it is to be *governed by the laws of the United States* and that Mr. Bhogal "irrevocably consents" to the exclusive jurisdiction in the United States "on all matters arising out of relating to [the] Employment Agreement."

21.     Mr. Bhogal started his employment with THI as planned on or about February 1, 2021.

22.     During the course of his employment with Tingo Mobile, Defendant Mmobuosi served as Mr. Bhogal's supervisor and employer: he directed his work, had the authority to hire and fire him (consistent with the Employment Agreement) and he set his rates of pay and the conditions of his employment.

23.     Mr. Bhogal fulfilled all of his commitments to THI and to further the interest of Tingo Mobile.

24.     Mr. Bhogal passed his probationary period without notice to the contrary.

25.     Despite remaining employed with the THI through at least July 2021 (in fact, he was never officially terminated from his employment), he was never paid according to the terms of the Employment Agreement.

26.     Mr. Bhogal received ***no pay, bonuses or the equity*** he was owed, except for a single payment of $9,975 in April 2021.

27.     On or around April 2021, Mr. Bhogal received assurances from Defendant Mmobuosi that additional wage payments would be coming shortly as due under the Employment Agreement.

28.     Defendant Mmobuosi sent additional assurances by e-mail dated on or around June 2, 2021, confirming forthcoming wage and bonus payments.

29.     Yet, no additional payments have been received to date in an egregious violation of the Employment Agreement and the laws of Connecticut.

30.     Despite not being paid for his work and informing THI and Defendant Mmobuosi about the non-payment, Mr. Bhogal continued to fulfill his obligations under the Employment Agreement through July 2021.

31.     Mr. Bhogal never received a notice of termination of his employment as contemplated by the Employment Agreement.

32.     Upon information and belief, Mr. Bhogal's e-mail account with the THI and Tingo Mobile remains active.

33.     On or about June 3, 2021, in part due to Mr. Bhogal's work, THI secured $400 million in capital from GEM Global Yield LLC SCS as part of its plan to go public.

34.     On or about August 19, 2021, iWeb, Inc. acquired Tingo Mobile. from THI in a stock exchange transaction.

35.     Upon information and belief, pursuant to the Acquisition Agreement, at closing, iWeb, Inc. agreed to issue 928,000,000 Class A Common shares to TIH, and 65,000,000 Class B Common Shares to the Class B Shareholders of TIH, in full satisfaction of and in exchange for 100% of the issued and outstanding shares of Tingo Mobile. Upon closing of the transaction Tingo Mobile became a wholly owned subsidiary of iWeb, Inc.

36.     Upon information and belief, iWeb, Inc. changed its name to Tingo, Inc. (Tingo) as part of the transaction to purchase Tingo Mobile from THI.

37.      Upon information and belief, and by virtue of Defendant Mmubousi's involvement in the dealings of each of the Corporate Defendants, all Defendants knew or should have known about Mr. Bhogal's potential claims. Upon information and belief, Defendant Mmubousit never disclosed these potential claims during Tingo's initial public offering.

38.     Upon information and belief, subsequent to the acquisition, Defendant Mmobuosi was then appointed as new CEO of Tingo.

39.     Upon information and belief, Tingo trades in the United States on the OTCQB under the symbol IWBB.

40.     As the counter-signatory on the Employment Agreement, and sole shareholder of THI and Tingo during all relevant times concerning this action, Defendant Mmobousi's knowledge of all decisions concerning Mr. Bhogal's employment with THI and Tingo Mobile is imputed to all Corporate Defendants.

41.     Upon information and belief, Defendant Mmobuosi exercises complete domination and control over the finances, business policies and business practices of THI and Tingo, such that these entities were the mere instrumentalities of the Individual Defendant.  Public sources show there is significant overlap in the management and the Board of Directors between THI and Tingo; many of THI's directors and shareholders are also on the Board of and are shareholders of Tingo. There is unity of interest between THI and Tingo due to the unity of ownership and management. Thus, all Corporate Defendants are jointly and severally liable for damages suffered by Mr. Bhogal.

42.     Discovery in this matter will also reveal the extent to which funds are shared properly between these two entities, whether the entities are appropriately capitalized, whether the organizations adhere to corporate formalities, and such other factors. As a result of the Defendants' illegal actions, Plaintiff has suffered financially, as he was deprived of the value of wages and other benefits he was promised, and has also incurred additional time and expenses in seeking alternate employment.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract Against Defendants THI and Tingo)

43.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42, as if fully set forth herein.

44.     Plaintiff and Defendant THI entered into an Employment Agreement pursuant to the terms summarized above in ¶ 2 of the Complaint.

45.     Plaintiff performed obligations under the Employment Agreement. Defendant THI did not. Defendants did not pay Plaintiff all of the compensation he was entitled to pursuant to the terms of the Employment Agreement.

46.     As a result of Defendant THI's breach of the Employment Agreement, Plaintiff has been deprived of his rights under the Employment Agreement, including his right to pay, bonuses, fringe benefits, and equity.

47.     Plaintiff is entitled to at least **$148,008.36**, or an alternate amount to be determined at trial, in back pay, benefits and bonuses, together with interest thereon, as well as 200,000 shares of THI1 as contracted in the Employment Agreement.

48.     Tingo has successor liability as a result of the acquisition transaction.

49.     That by reason of the foregoing breach of contract, Plaintiff has been damaged in an amount to be determined at trial, plus continuing interest accruing from and after the date of the breach through the date that Defendants' obligation is satisfied in full, which is the amount justly due and owing to Plaintiff, plus reasonable attorneys' fees and costs.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing against All Defendants)

50.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 49, as if fully set forth herein.

51.     Defendants' conduct as alleged above constitutes a breach of the covenants of good faith and fair dealing implied but not expressly written in every contract. This covenant also requires that neither party to a contract will do anything that injures the right of the other to receive the benefits of the contract.

52.     As part of the covenants of good faith and fair dealing, it is implied that Defendants entered into the Employment Agreement with the intent to abide by the promises set forth therein.

53.     As part of the covenants of good faith and fair dealing, it is implied that Defendants would not terminate Plaintiff's employment to avoid the promises set forth therein.

54.     As set forth above, Defendants breached the implied covenants of good faith and fair dealing.

55.     Defendants' wrongful actions serve as a willful and intentional deception and misrepresentation not expressed by, reserved in, and/or otherwise contemplated by the written terms and conditions of the Employment Agreement.

56.     As a direct and proximate result of the Defendants' breach of the implied covenants of good faith and fair dealing, Plaintiff has been damaged in an amount to be determined at trial, together with costs, interest, and attorneys' fees.

57.     Defendant Tingo carries successor liability as a result of the acquisition transaction.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of Connecticut Wage Payment Law CONN. GEN. STAT. ANN. §§ 31-58 TO 31-76O Against THI and Tingo)

58.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 57, as if fully set forth herein.

59.     THI is an employer within the meaning of CWPL § 31-71a.

60.     Plaintiff is an employee within the meaning of CWPL § 31-71a.

61.     Pursuant to the terms of the Employment Agreement, Plaintiff's compensation constitutes wages within the meaning of CWPL § 31-71a.

62.     THI violated CWPL § 31-71e by willfully, egregiously and in bad faith withholding Plaintiff's wages, including his base salary, bonuses, fringe benefits, and promise of equity.

63.      THI also violated CWPL §§ 31-71b; 31-71i; 31-71c by failing to pay Plaintiff bi-weekly during Plaintiff's employment; failing to pay Plaintiff no later than 8 days after the end of each pay period, and, to the extent THI claims Plaintiff was separated from employment, failing to pay him promptly after his termination date.

64.     In the course of the acquisition described above, Tingo assumed all liabilities of THI. Tingo also ended up being the entity that became publicly traded, and the stock to which Mr. Bhogal should have received shares.  Tingo carries successor liability as a result of its acquisition.

65.     As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, plus continuing interest accruing from and after the date of the breach through the date that Corporate Defendants' obligation is satisfied in full, *double that* which is the amount justly due and owing to Plaintiff, plus reasonable attorneys' fees and costs and statutory damages pursuant to CWPL § 31-72.

66.     As successor in interest, Tingo is responsible for the liabilities, including employment-related liabilities, of THI.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Violation of Connecticut Wage Payment Law, CONN. GEN. STAT. ANN. §§ 31-58 TO 31-76O Against Individual Defendant)

67.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 66, as if fully set forth herein.

68.     Individual Defendant is the Chief Executive Officer of THI.

69.     Individual Defendant is the Chief Executive Officer of Tingo.

70.     Individual Defendant is an employer within the meaning of CWPL § 31-71a.

71.     Individual Defendant personally directed and controlled Plaintiff's work, had the authority to hire and fire Plaintiff, had the authority to set Plaintiff's wages, and was specifically responsible for the non-payment of wages to Plaintiff under the Employment Agreement.

72.     Plaintiff is an employee within the meaning of CWPL § 31-71a.

73.     Pursuant to the terms of the Employment Agreement, Plaintiff's compensation constitutes wages within the meaning of CWPL § 31-71a.

74.     Individual Defendant violated CWPL § 31-71e by willfully, egregiously and in bad faith withholding Plaintiff's wages.

75.     Individual Defendant also violated CWPL §§ 31-71b; 31-71i; 31-71c by failing to pay Plaintiff bi-weekly during Plaintiff's employment; failing to pay Plaintiff no later than 8 days after the end of each pay period, and, to the extent Individual Defendant claims Plaintiff was separated from employment, failing to pay him promptly after his termination date.

76.     As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, plus continuing interest accruing from and after the date of the breach through the date that Individual Defendant's obligation is satisfied in full, *double that* which is the amount justly due and owing to Plaintiff, plus reasonable attorneys' fees and costs and statutory damages pursuant to CWPL § 31-72.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Unjust Enrichment Against All Defendants)

77.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 76, as if fully set forth herein.

78.     Defendants' conduct as alleged above gives rise to unjust enrichment against Defendants.

a)      Specifically, Defendants THI and Tingo benefitted by the work performed by Mr. Bhogal in obtaining financing and ultimately in the successful acquisition of Tingo Mobile by Tingo. Tingo Mobile also benefited from work performed by Mr. Bhogal when it permitted Mr. Bhogal to perform work for it. Defendant Mmobuosi also benefited from the free labor Mr. Bhogal provided to the Corporate Defendants, entities Defendant Mmobuosi exercised significant control over and in which Defendant Mmobuosi owns shares and stood to profit from through reduced labor costs.  By reducing the expenses of THI and Tingo, the value of Defendant Mmobuosi's own shares in those entities increased.

b)      Defendants Tingo and THI unjustly and willfully did not pay Mr. Bhogal for the work performed.

c)      Such failure of payment harmed Mr. Bhogal as he was deprived of the benefit of the contract agreed to; he incurred customary living expenses while not receiving a paycheck while working; and he was not paid the value of the services he provided to THI and Tingo.

d)      Mr. Bhogal reasonably relied on the assurances of Defendants and the written Employment Agreement, which prevented him from mitigating his damages through finding alternate employment, until it became painfully obvious that Defendants would not uphold their end of the contract. It is a gross violation of public policy for any employer to deprive an employee of wages, particularly without any justification, as Defendants did here to Plaintiff.

79.     As a successor in interest, Tingo is responsible for the liabilities, including employment-related liabilities, of THI.

12

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff SUKHDEEP BHOGAL respectfully requests judgment as follows:

A.      Awarding damages in favor of Plaintiff, in an amount to be determined at trial, but in no event less than (i) **$296,016.72**, plus interest, attorneys' fees and costs, and (ii) 200,000 shares of THI (or the equivalent number of shares in the successor entities);

B.      Awarding civil penalties in the amount of $5,000;

C.      Awarding punitive damages in an amount to be determined at trial;

D.      Holding Defendants jointly and severally liable for all amounts awarded by the Court; and

E.      Granting Plaintiff such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial in the within-entitled action.

Date:  March 7, 2022                                        WOLTZ & FOLKINSHTEYN, P.C.
       Stamford, CT

                                                           By: *Jennie Woltz*
                                                               Jennie Woltz
                                                               P.O. Box 3111
                                                               Stamford, CT 06905
                                                               203.276.0792
                                                               jwoltz@wfpclaw.com
                                                               Federal Bar No: CT31250

                                                           *Attorney for Plaintiff Sukhdeep Bhogal*

13

# EXHIBIT A



**EMPLOYMENT AGREEMENT**

January 21,2020

Between

*Tingo International Holdings, inc.*

And

**Sukhdeep Bhogal**

(hereinafter referred to as "The Employee")

IN CONFIRMATION of the Employee's appointment as  Chief Executive Officer Tingo Mobile Plc Developing high quality business strategies and plans ensuring their alignment with short-term and long-term objectives, leading and motivating subordinates to advance employee engagement develop a high performing managerial team, oversee all operations and business activities to ensure they produce the desired results and are consistent with the overall strategy and mission, make high-quality investing decisions to advance the business and increase profits, enforce adherence to legal guidelines and in-house policies to maintain the company's legality and business ethics, review financial and non-financial reports to devise solutions or improvements, build trust relations with key partners and stakeholders and act as a point of contact for important shareholders, analyze problematic situations and occurrences and provide solutions to ensure company survival and growth and maintain a deep knowledge of the markets and industry of the company.



1.GOVERNING LAW

This Employment Agreement is governed by the laws of United states of America without reference to conflicts of laws principles. The Employee hereby irrevocably consents to exclusive jurisdiction in the courts of Governing the United states of America on all matters arising out of or relating to this Employment Agreement.

2.PROBATION

1.1 The Employee's employment shall be subject to a 3 (Three) month probation period. During this period, the Employee's suitability for continued employment shall be assessed.

1.2 During the probation period, the Employee's employment will be subject to 1 (one) week's written notice of termination, given either way.

3.DURATION

This offer is contingent upon the successful background and reference check.

This contract shall commence on the start date (February 1, 2021), notwithstanding of the date of signature thereof, and shall continue for an indefinite period, subject to the provisions of clauses 2 and 4 hereof.

4. TERMINATION

4.1     Upon successful completion of the Employee's probation period and prior to completion of 3(Three) months continuous employment, 1 (one) weeks written notice of termination will be required from either side. Upon completion of the first 3 (Three) months and prior to 1 (one) year of continuous employment, 2 (two) weeks written notice of termination will be required from either side. Upon completion of 1(one) year of continuous employment, 4 (four) weeks written notice of termination given either way will be required.

4.2     Notwithstanding the provisions of clauses 2, 3 and 4.1 above, this contract may be terminated without notice by the Company for any cause recognized as sufficient in law.

5.PLACE OF WORK

The Employee shall be employed at the Company's premises situated in Lagos, Nigeria or any such other place or places as the Company may from time to time direct, as and where necessary.



6.DUTIES

The Employee agrees and undertakes to —

6.1 Serve the Company diligently and honestly;

6.2 Subject to the direction of the Company, perform all the duties customarily performed by an incumbent of, and associated with the Employee's position;

6.3 At all times act in the best interest of the Company;

6.4 Devote all his working hours to the performance of his or her duties in terms of his contract

6.5 In addition to the duties referred to above, the Employee will perform any other reasonable duties as may be allocated to him by the Company from time to time, without any payment of additional remuneration.

7.REMUNERATION

7.1    It is recorded and agreed that the Company shall pay the Employee a fixed salary of USD 200,000 (Two Hundred thousand only) per year gross after all deductions, payable as mentioned below for the first year.

  i    USD 30,000 (Thirty Thousand only) to be paid on or before 28th Feb 2021 as joining bonus. The mentioned joining bonus is fully refundable to the company only if the employee voluntarily resigns within first 12 months of the employment.

  ii    USD 170,000 (One hundred seventy thousand only) to be paid as monthly salary on the last day of the month.

  iii    After first 12 months the total fixed salary to be paid as monthly salary on the last day of the month.

7.2    The employee will also be allocated 200,000 shares of Tingo International Holdings, Inc. only to be sold during share tender offered by employer.

7.3    The employee will be paid one time relocation allowance of USD 15,000 (Fifteen Thousand only) by 15th April 2021 or before undertaking the first international trip to Nigeria, whichever is earlier.



7.4    The Employee may the paid a commission in each month it earned based on provision.


7.5    Provided that he/ she is in the Company's employment at the time the Company pays commissions, if any, to its Employees and he/ she has not given or been given notice of termination of employment and is not on suspension at the time, and subject to the provisions of the Company's commission scheme as determined by the Company from time to time.


7.6    The Employee is entitled to commission compensation provided to the Employee shall achieve 100% quota. It shall be tied to the Employee's overall success and meeting the corporate expectations of the Employer. The specific details of the commission plan, quotas and objectives of the Employee will be outlined by the Employer from time to time and may include cash bonuses, stock options or other forms of bonus compensation as the Employer considers appropriate. All commission plans, goals, quotas and objectives are the sole discretion of the Employer.


7.7    Payment of the Employee's monthly salary shall be made by way of direct transfer into the Employees account at a financial institution of his choice.


8.   DEDUCTIONS

8.1    The Employee hereby authorizes the Company to deduct from and/ or set-off against his gross remuneration all amounts required by law or as agreed to herein. In this regard, the Employee specifically authorizes the Company to deduct from and/ or set off his remuneration the following


8.2    Any amount due in terms of legislation, a written agreement, a court order or wage regulation measure; and


8.3    Any amount due and owing to the Company by the Employee

9.   HOURS OF WORK

9.1    The employee shall put in 50 (fifty) ordinary hours a week.


9.2    Notwithstanding the above, and due to the nature of the work performed by the Employee, he will be required to make himself available to work outside of the hours set out in clause 9.1 above and hereby agrees to do so without the payment of additional remuneration. In this regard, it is specifically recorded that the Employee accepts that overtime constitutes an essential part of his employment.


10. ANNUAL LEAVE

10.1   The Employee shall be granted annual leave of 30 working days in any particular year + bank holidays.

10.2   The Employee shall not be entitled to accumulate leave for more than 6 months after the end of his leave cycle i.e. every 12 months of continuous employment. Any leave in excess of the statutory minimum of 21 (twenty one) consecutive days not taken within 6 (six) months period shall be forfeited. Leave must be applied for in writing and shall be taken at a time convenient for the Board of the Company.

11. SICK LEAVE

11.1   During the period of 36 (thirty six) consecutive months' employment, the Employee will be entitled to a number of days paid sick leave equal to the number of days the Employee works over a period of 6 (six) weeks.

11.2   However, during the first 6 (six) consecutive months of employment, the Employee will be entitled to 1 (one) working day's paid sick leave in respect of every 26 (twenty six) days worked.

11.3   For every absence from work for a period of more than 2 (two) consecutive days or on more than 2 (two) occasions during an 8 (eight) week period. The Employee will be obliged to furnish the Company with a medical certificate from a registered medical practitioner, stating the nature and duration of his incapacity before sick pay will be granted.

11.4   The Employee will also be obliged to advise the Company of his absence on the first day of his absence from work for any reason whatsoever, including but not limited to ill-health and by no later than 12:00pm on that day.

12. FAMILY RESPONSIBILITY LEAVE

12.1   After the first 4 (four) consecutive months of employment, the Employee will be entitled to 3(three) working days family responsibility leave on full pay in the following instances —In the event of the Employee's child's illness or, the Employee's child's birth' or

12.1.2 In the event of the death of —

12.1.2.1 The Employee's spouse of life partner;

12.1.2.2 The Employee's parent, adoptive parent, grandparent, child, adopted child, grandchild or sibling, as the case may be.

12.2   The Company may, in its sole discretion, require the Employee to furnish reasonable proof of the event contemplated above.

12.3   Family responsibility leave may not be accumulated.

13. OTHER INTERESTS OR PART-TIME EMPLOYMENT

The Employee is permitted to be employed, directly or indirectly, or engaged in any other business or undertaking for the duration of his employment with the Company.

14. CONFIDENTIALITY

14.1   The Employee shall not divulge, directly or indirectly, any confidential information to any unauthorized persons or bodies relating to any aspect of his work or of any of the operations or processes of the Company. Such confidential information shall encompass all aspects of the business of the Company and shall include but shall not be limited to, methods, documentation, client lists, programs, trade/ industrial secrets, technical information, or any other information obtained by, disclosed or made available to, the Employee or any other information which could be damaging to the Company's operations or which could benefit other parties to the detriment of the Company or embarrass the Company in any respect. Such restrictions shall apply during and after the Employee's employment with the Company Such confidential information referred to in

14.2   above may only be disclosed with the express written consent of the Company, unless such information has already been published or has been made publicly known by the Company.

14.3   The Employee undertakes to take all reasonable steps and precautions to prevent the unauthorized disclosure of confidential information through or by any other party.

14.4   The Employee undertakes not to use or apply, whether directly or indirectly in whole or in part, confidential information as defined in clause 14:1 above without the prior written consent of the Company other than in the course of his or her employment with, or for the purposes of the Company.

14.5   The Employee undertakes during the currency of this agreement or at any time after the termination thereof, whether for his/ or her benefit or that of another, not to make use of, avail himself of or derive any benefit or profit from, such confidential information.

15. RESTRAINT OF TRADE

15.1   It is recorded that, during the currency of his employment with the Company, the Employee will acquire know-how and expertise is further recorded that the Company will divulge confidential information, trade secrets and expertise to the Employee during his employment

15.3 In view of clauses 15.1 and 15.2 above and to protect the Company's interests, the Employee undertakes in favor of the Company and agrees that, for as long as the Employee remains employed by the Company and for the further periods stated below after having ceased by the Company for any reason to be employed by the Company, the Employee will now —

15.3.1 Within a period of 12 (twelve) months of ceasing to be employed by the Company for whatever reason, anywhere within England and Wales, or in any other Country in which the Company may carry on business at the time of enforcing this restraint —

15.3.1.1   Be engaged, interested or concerned, whether financially or otherwise, or whether directly or indirectly in; or

15.3.1.2   Without derogating from the generality of the foregoing, be a director of, or shareholder or partner or other participant (whether financial or otherwise in, or Employee, principal, agent, representative administrator or servant of, or hold any other interest or position whatsoever with or in any other person or undertaking which is engaged in; or

15.3.1.3   Act as a consultant or advisor (whether for remuneration of not) to any person or undertaking which is engaged in, the conduct of any business similar to or which in anyway competes with, the business conducted by the Company during the last 12 (twelve) months of the Employee's employment with the Company;

15.1.2 Within a period of 12(twelve) months of ceasing to be employed by the Company, offer employment to or cause to be employed or solicit for employment by himself or any third party any person who is or was employed by the Company or was so employed at any time during a period of 12 (twelve) months preceding the commission of the act so restrained.

15.1.2.1 Notice period to read 1 week notice during first 3 months employment (probation period) upon successful completion of probation notice period will be 4 weeks.

15.4  The restraint set forth above shall —

15.4.1 In respect of each act or class of acts, which is forbidden;

15.4.2 In so far as they relate to any part of the area set forth above;

15.4.3 In respect of each year of their duration; in all respects be severally and separately enforceable

15.5  The parties hereto hereby acknowledge that the restraints imposed are —

15.5.1 Fair and reasonable as regards their nature, extent and period;

15.5.2 Necessary to protect the legitimate interests of the Company and of each other;

15.5.3 Deemed to be within the public interest

15.6 The Employee acknowledges and agrees that the Company shall be entitled to cede the benefits of this restraint of trade clause to any person or persons to whom the Company hereafter from time to time sells its business to and undertakes in such event to be bound by any concessionary in respect of the restraints hereby imposed.

15.7 The Employee undertakes to avoid any conflict of interest between himself and the Company and to seek to uphold and further the interests of the Company at all times. The Employee undertakes to avoid placing himself in a position whereby his commitment to the Company would be placed in issue or where the potential for compromising himself could arise.

16. RETURN OF COMPANY PROPERTY

Upon the termination of the Employee's employment with the Company for whatever reason and/ or at any other time, if the Company so requests, the Employee is required to return to the Company, all documents notes, software programs, motor vehicle and/ or any other property of the Company.

17. CODES, PROCEDURES, RULES AND REGULATIONS

17.1  The Employee undertakes to acquaint himself with and conform to the terms of the Company's codes, procedures, rules and regulations, which have been, or may be, promulgated by the Company from time to time. The Company reserves the right to amend any of its codes, procedures, rules and regulations subject to reasonable notice to the Employee. The Company's disciplinary code and grievance procedure as promulgated and implemented from time to time shall serve as a guideline only.

17.2  Copies of the Company's codes, procedures, rules and regulations shall be available to the Employee at the Company's premises upon request.

17.3   The Employee acknowledges and agrees that the Company may from
       time to time amend or revise the benefits programs as it deems appropriate.


18. GENERAL


This letter, together with the Tingo International Holdings, Inc. Employment Agreement
(Where applicable), sets forth the entire agreement and understanding between the
Company and you, relating to the subject matter herein and supersedes all prior
discussions and agreements.


Dozy Mmobuosi,

Group CEO

Tingo International Holdings, inc
SIGNED

On 21st January 2021